No. 37,867

RURAL HIGH-SCHOOL JOINT DISTRICT No. 1 of Neosho, Allen and Bourbon Counties, Kansas, *Petitioner*, v. MYRTLE POPE, County Superintendent of Public Instruction of Allen County; EDNA GOLLIDAY, County Superintendent of Public Instruction of Bourbon County; STANLEY J. KIRK, County Clerk of Allen County; MARIE NEUBAUER, County Clerk of Bourbon County; and EVERETT STAFFORD, County Clerk of Neosho County, Kansas, *Respondents*.

(210 P. 2d 587)

Opinion filed October 22, 1949.

*Stanley E. Toland,* of Iola, argued the cause and was on the briefs for the petitioner.

*J. D. Conderman,* of Iola, argued the cause, and *Daniel O. Lardner,* of Fort Scott, was with him on the briefs for the respondents.

The opinion of the court was delivered by

PRICE, J.: This is an original proceeding in mandamus in which

petitioner seeks to compel the respondents to perform certain duties imposed upon them by statute arising out of the formation of petitioner rural high-school joint district. Briefly summarized, the petition alleges the following:

Prior to the attachment proceedings hereinafter described, Rural High-school District No. 1 of Neosho county was a duly organized and exisitng rural high-school district, with its territory comprising all of Grant township in Neosho county and no other. The district had been organized for many years and had continuously operated its rural high school with the school buildings being located at Stark, in the district. On January 7, 1949, a majority of the electors residing in a territory consisting of approximately twenty sections of land in Allen county and approximately eight sections of land in Bourbon county, all of which was not within the limits of any rural high-school district, but which was adjacent to the territory of Rural High-school District No. 1 of Neosho county, made written application to the board of the latter district for the attachment of said territory to the rural high-school district for rural high-school purposes. On the same date this application was unanimously approved by the rural high-school board and on the following day, January 8, 1949, the county superintendent of public instruction of Neosho county consented to and approved the attachment of the territory to Rural High-school District No. 1 of Neosho county and made a record thereof. On January 19, 1949, a notice of the attachment of the territory involved was published by the county superintendent of public instruction of Neosho county, as provided by law, and that as a result of the attachment proceedings and the publication of the notice Rural High-school District No. 1 of Neosho county became a rural high-school joint district and is now Rural High-school Joint District No. 1 of Neosho, Allen and Bourbon counties.

The petition then alleges that thereafter a number of electors of the attached territory and the board of county commissioners of Allen county appealed to the state superintendent of public instruction from the order of attachment made on January 8; that such appeal was heard by the state superintendent of public instruction on March 10, 1949, and was by him denied on April 26, 1949. It is then alleged that on or about May 24, 1949, the county superintendent of Neosho county notified the county clerks and county superintendents of Allen and Bourbon counties of the fore-

going attachment proceedings, but that on the last Monday of May, 1949, the county superintendents of Allen county and Bourbon county failed, neglected and refused to certify the boundaries of Rural High-school Joint District No. 1 of Neosho, Allen and Bourbon counties, as provided and required by G. S. 1935, 72-218, and that said officials still fail, neglect and refuse to do so; that the school building and the greater portion of territory of the petitioner district lie within Neosho county; that under the circumstances it is the duty of the county clerks of Allen and Bourbon counties to furnish the county clerk of Neosho county with the assessed valuation of the territory of said district lying within each of said Allen and Bourbon counties; that a written request and demand for such assessed valuation was made on or about August 17, 1949, upon the respondent county clerks of Allen and Bourbon counties by the respondent county clerk of Neosho county, in order that the latter could determine the levy of said district for rural high-school purposes and certify the same to the county clerks of Allen and Bourbon counties to extend on the tax rolls of the property in their respective counties lying within the boundaries of petitioner district, but that the county clerks of Allen and Bourbon counties refused to make such certification.

The prayer is for an order of this court directing and requiring the county superintendents of Allen and Bourbon counties to certify to the county clerks of their respective counties the boundaries in their respective counties of petitioner district, and for a further order directing and requiring the county clerks of Allen and Bourbon counties to certify to the county clerk of Neosho county the assessed valuation for the year 1949 of the taxable property of the territory of said petitioner district within each of those two counties, so that the respondent county clerk of Neosho county can determine the tax levy for 1949 on all taxable property of petitioner district and certify such levy to the respondent county clerks of Allen and Bourbon counties to be extended by them on the tax rolls of the property of said district in their respective counties.

To this petition the respondent county superintendents and county clerks of Allen and Bourbon counties filed demurrers on the ground that the petition fails to state facts sufficient to constitute a cause of action against such respondents and to justify the relief sought.

The respondent county clerk of Neosho county filed a motion to dismiss as against him on the ground that he is not a necessary

party to the controversy and that he was made a respondent in the action only for the reason that he refused to join as a petitioner and that he has been and is ready, willing and able at all times to perform his official duties. This motion to dismiss has been heretofore by this court sustained and the county clerk of Neosho county is no longer a party to this proceeding.

Various contentions are made by the parties to this action but briefly summarized they are as follows:

The position taken by petitioner district is that the attachment proceedings are in full compliance with the provisions of G. S. 1935, 72-3514; that the county superintendents of Allen and Bourbon counties are required to certify the boundaries of petitioner district as to the territory of the district in their respective counties under the provisions of G. S. 1935, 72-218; that the taxable property within the boundaries of petitioner district in Allen and Bourbon counties is subject to the 1949 tax levy of the petitioner district, and that the county clerks of Allen and Bourbon counties are required by law to certify to the county clerk of Neosho county the assessed valuation of the taxable property within the boundaries of petitioner district in their respective counties so that the county clerk of Neosho county can determine the 1949 tax levy on all taxable property of the district.

On the other hand, the contention of the respondents is that the attachment proceedings were not in full compliance with the provisions of G. S. 1935, 72-3514, in that the consent of the county superintendents of Allen and Bourbon counties was not obtained, and further, that if such consent by the county superintendents of Allen and Bourbon counties was unnecessary, then that the effective date of the formation of petitioner district was April 26, 1949, that being the date of the decision by the state superintendent of public instruction, in which event the attached property located in Allen and Bourbon counties would not be subject to the 1949 tax levy of petitioner district because of the provisions of G. S. 1935, 79-1807.

Going one step farther it may be said that there are in reality only two questions presented to us for decision:

*First.* Under the facts of this case was it necessary to obtain the consent of the county superintendents of Allen and Bourbon counties in order to form petitioner district under the provisions of G. S. 1935, 72-3514?

*Second.* If such consent by the county superintendents of Allen and Bourbon counties was unnecessary under the statute referred to, when was the effective date of the formation of petitioner district?

The provisions of G. S. 1935, 72-3514, material for our purposes, are as follows:

"Territory outside the limits of any rural high-school district, but adjacent thereto, may be attached to such high-school district for high-school purposes, upon application being made to the rural high-school board by a majority of the electors of such adjacent territory, and upon the approval of said rural high-school board and the consent of the county superintendent of public instruction: (*Provided,* that an appeal may be taken from the decision of the county superintendent to the board of county commissioners, if such property proposed to be attached is within one county, and to the state superintendent of public instruction if same be within two or more counties, whose respective decision in either case will be final. . . .) The county superintendent shall make a record of such attachment of territory and shall publish a notice of the same, and thereafter such attached territory shall be and compose a part of such rural high-school district for such rural high-school purposes only and the taxable property of such adjacent territory shall be subject to taxation and shall bear its full proportion of all expenses incurred in maintaining said rural high school."

We think the answer to the first question is to be found in the case of *State, ex rel., v. Rural High-school Dist.,* 134 Kan. 674, 8 P. 2d 330, the facts of which are quite similar to the instant case. In that case Rural High-school District No. 1 of Norton county was an organized existing rural high-school district. All of the territory comprising it was situated in Norton county, the southern boundary of the district being the south line of the county. The majority of the residents of certain described adjacent territory situated in Graham county, and not at that time within any rural high-school district, petitioned the high-school board of Rural High-school District No. 1 of Norton county and the county superintendent of that county to be attached by annexation to Rural High-school District No. 1 of Norton county. The petition was approved by the board of such district and the county superintendent of Norton county gave her consent in writing to such attachment, made the appropriate record of the same and duly published the notice of the attachment of such territory to the district. The county superintendent of Graham county was not consulted about this proceedings and did not give his consent thereto. Thereafter Rural High-school District No. 1 of Norton county assumed to exercise authority and jurisdiction for school purposes over the territory in

question and later proceedings were had attempting to attach the territory in controversy, together with other territory, to Rural High-school District No. 3 of Graham county. Litigation arose and when the controversy reached this court it was held that the statute (72-3514) controlled the formation of the rural high-school district and that the consent of the county superintendent of Graham county to such attachment was not required. In the case at bar the county superintendents of Allen and Bourbon counties are in the same position as the county superintendent of Graham county in the case referred to. Respondents frankly admit that their theory with respect to the consent of the county superintendents of Allen and Bourbon counties being necessary appears to be in conflict with the holding in the above cited case, but contend that the precise point here urged was not before nor decided by the court in that case, except perhaps inferentially, and they call our attention to the recent case of *Lenora Rural High School v. McGuire,* 161 Kan. 716, 171 P. 2d 291, as support for their contention.

In that case the petitioner district was an existing rural high-school joint district—that is, it consisted of territory in more than one county and it was held that upon an application of electors to attach adjacent territory, outside the limits of any rural high-school district, to an existing rural high-school *joint* district requires the consent of the superintendent of the county in which the school building is located and the superintendent of the county in which the adjacent territory is situated. However, the facts and reasoning of the court in the two cases are readily distinguishable. In the former case the original rural high-school district consisted of territory in one county only, while in the latter case the petitioner district was a rural high-school *joint* district consisting of territory in two counties, and in the opinion in the latter case it was said:

"The case of *State, ex rel., v. Rural High-school Dist.,* 134 Kan. 674, 8 P. 2d 330, also relied upon by petitioner is not directly in point. That case, as previously indicated, involved the creation of the instant petitioner joint district. In other words, in that case we did not have the question of attaching adjacent land to an *existing joint* high-school district. Under those circumstances we held the statute completely covered the case and that the consent of the county superintendent of Graham county was not necessary."

We think that the two foregoing decisions make it clear that in a situation such as is presented in the case at hand the statute (72-3514) is exclusive and controlling, and that the consent of the county

superintendents of Allen and Bourbon counties was not necessary for the valid formation of petitioner district.

This brings us to the question as to the effective date of the formation of petitioner district. Petitioner contends the formation was effective as of January 19, 1949, the date the notice was published by the county superintendent of Neosho county. Respondents argue that the effective date would be April 26, 1949, that being the date the state superintendent of public instruction announced his decision in the matter. The question is important because of G. S. 1935, 79-1807, which provides:

"Any alterations, additions to, or changes in, the boundaries of any school district, municipality, or body politic of the state of Kansas, made according to law, shall take effect for taxation purposes on the last day of February following:   . . ."

In other words, if petitioner's theory is correct the attached territory located in Allen and Bourbon counties would be liable for its proportionate share of the 1949 tax levy for the district, while if respondents are correct then such territory would not bear any of the tax burden of the district until 1950. We are advised that the budget and tax levy of petitioner district as determined by its electors at the annual school meeting, the same being based upon the inclusion of the taxable property of the district located in Allen and Bourbon counties as well as Neosho county, has been filed by the clerk of the board of petitioner district with the county clerks of all three counties, as required by law, and that students of high-school age residing in the attached territory are now attending the school maintained and operated by petitioner district. It is obvious that if the 1949 tax levy of petitioner district is not made upon the taxable property of the district in Allen and Bourbon counties then the whole 1949 tax levy must be borne by the property within the territory of the district in Neosho county. In support of their theory respondents rely upon the wording of the statute (72-3514) to the effect that where such property *proposed* to be attached is in two or more counties an appeal may be taken from the decision of the county superintendent to the state superintendent, whose respective decision will be *final*, and they argue that by the use of the two words "proposed" and "final" the legislature has definitely established the time when an attachment of territory becomes final, provided an appeal is taken in time and other legal requirements have been met—that time being when the proper appellate authority takes the *final* action on the *proposed* attachment. While not cited

in connection with the specific point now under consideration, respondents call our attention to the case of *Jones v. Chase County Comm'rs*, 152 Kan. 278, 103 P. 2d 899, and we note the following language in the opinion:

"Of the regularity of the application for attachment, the approval by the rural high-school board and the consent of the county superintendent there is no question. But that an appeal lies under the above statute may not be doubted, and until that appeal has been disposed of, there has been no attachment."

In passing, we think that the language quoted was stated too strongly and that it is not determinative of the precise point under consideration in the instant case. Also, when read in connection with the full text of the opinion it is apparent that the language quoted was intended to mean that the right of appeal from the action of the county superintendent in that case was not cut off.

We are unable to agree with the theory of respondents that the attachment is not complete until the appellate authority has rendered its decision and in our opinion the more reasonable and logical interpretation of the words in the statute, "whose decision shall be final," is that there shall be no further appeal from the decision of the state superintendent of public instruction, and it may well be that the legislature used the words in that sense so as to preclude the possibility of a further appeal under the provisions of G. S. 1935, 60-3301. We are of the opinion that when the county superintendent of Neosho county gave her consent to the attachment of the territory in controversy on January 8, 1949, made a record thereof and then on January 19, 1949, published the notice of such attachment, the attachment proceedings were then completed and, in the words of the statute:

" . . . thereafter such attached territory shall be and compose a part of such rural high-school district for such rural high-school purposes only and the taxable property of such adjacent territory shall be subject to taxation and shall bear its full proportion of all expenses incurred in maintaining said rural high school."

If the legislature had intended that the action of the county superintendent should not take effect until the time for an appeal had expired or, in case of appeal, until the appeal is disposed of, it would have been a very simple matter to have so provided. Nowhere in the statute do we find any provision that the taking of an appeal from the action of the county superintendent can stay or undo the effect of her action. Only a reversal on the appeal would have that effect.

In conclusion, we hold therefore that under the facts of this case

the consent of the county superintendents of Allen and Bourbon counties was unnecessary in order to form the petitioner district; that the effective date of the formation of such district was January 19, 1949, and that by the provisions of G. S. 1935, 79-1807, the attached territory became a part of the petitioner district for taxation purposes on the last day of February, 1949.‛ It therefore follows that the writ of mandamus to compel the respondent county superintendents of public instruction and the county clerks of Allen and Bourbon counties to perform the ministerial acts incumbent upon them by statute, as prayed for in the petition filed herein by petitioner district, should be and the same is hereby allowed.

It is so ordered.